# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 97

APRIL TERM, A.D. 2021

August 30, 2021

KATHRYN ANN HEIMER,

Appellant
(Plaintiff),

v.                                                                      S-21-0033

MASON WILLIAM HEIMER,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

***Representing Appellant:***
    *D. Stephen Melchior, Melchior Law Firm, P.C., Cheyenne, Wyoming.*

***Representing Appellee:***
    *Mason William Heimer, pro se.*

***Guardian ad Litem:***
    *No appearance.*

***Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.***

*\* Chief Justice at time of brief-only conference.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]   Kathryn (Mother) and Mason (Father) Heimer divorced in 2018.  Mother filed a string of post-divorce motions in the district court, and this appeal concerns her latest two.  At the hearing on Mother's fifth motion for order to show cause why Father should not be held in contempt, the district court refused to consider 180 pages of communications attached to Mother's reply brief, granted her motion in part, denied it in part, and awarded her $100 in attorney fees.  Approximately five weeks later, Mother filed her sixth motion for order to show cause, raising again the issue of Father's allegedly harassing communications since their divorce.  At that hearing, the district court limited Mother to evidence of Father's communications since the previous hearing.  Based on the admissible documents, the district court found Father in contempt of court and awarded Mother attorney fees.  Mother appealed the district court's denials of her fifth motion, the $100 attorney fee calculation, and the ruling at the hearing on the sixth motion restricting the evidence she could present.  We affirm in part, reverse in part, and remand.

## *ISSUES*

[¶2]   Mother raises seven issues, which we condense and reorganize:

> 1.      Was Mother denied due process when the district court refused to consider the attachments to Mother's reply brief at the hearing on her fifth motion?
>
> 2.      Was Mother barred from relitigating Father's allegedly harassing communications that occurred prior to her fifth motion?
>
> 3.      Did the district court err when it found Father was not in contempt for failing to timely pay his share of the children's medical bills?
>
> 4.      Did the district court abuse its discretion by awarding Mother, without analysis, $100 for attorney fees related to Mother's fifth motion?

## *FACTS*

[¶3]   Mason William Heimer and Kathryn Ann Heimer were divorced in 2018 and have joint legal custody of their two minor children.  Mother has primary physical custody.

1

Mother has returned to court several times to enforce the divorce decree and related orders. She appeals the orders on her two latest motions.

[¶4] Mother's fifth motion to show cause requested Father be held in contempt for three reasons. Mother alleged Father disobeyed the divorce decree because he paid child support by direct wire transfer to Mother's bank account instead of through the State Disbursement Unit, thereby causing Mother to incur $10 per transfer in bank fees, which had accumulated to $210. She alleged Father untimely reimbursed her for his share of the children's medical expenses, and when he did so, he paid by direct wire transfer, thereby causing her to incur more bank fees. She alleged Father used the Talking Parents website[1] to "harass [Mother] by falsely making and implying mean and nasty and derogatory and deprecatory statements to [Mother] and by injuring, maltreating and vilifying [Mother]." Her motion did not identify any specific communications she found harassing. Finally, she requested attorney fees.

[¶5] Father denied the allegations. On her harassment claim, Father stated that Mother "failed to produce a single statement or scintilla of evidence regarding what communication allegedly violates the Order." Mother replied she had "significantly more than [a] 'single statement or scintilla of evidence'" of harassment, and she attached 180 pages of exhibits, 148 pages of which contained all of the parties' communications via the Talking Parents website over two years.

[¶6] On June 25, 2020, the district court held a thirty-minute hearing on the fifth motion. The district court issued an oral ruling finding Father in contempt for his failure to follow the clear language of the divorce decree that required him to pay child support through the State Disbursement Unit. The court ordered Father to pay Mother $210 for her bank fees and $100 for her attorney fees related to that claim. The district court did not find Father in contempt on the medical expenses issue, but reminded Father he needed to timely pay his share of the expenses in a manner that did not require Mother to incur bank fees.

[¶7] Mother's attorney discussed the harassing nature of Father's communications and suggested the court would find Father in contempt if it read through her exhibits. The court stated it had looked very carefully at Mother's motion to find specific allegations of Father's misconduct in violation of the supplemental divorce decree, and found only "some very broad language that '. . . Defendant is abusing the Talking Parents[] website by making mean and nasty, derogatory statements'" to Mother. The court characterized Mother's exhibits as "record dumping" and said, "I guess you're asking me to review and

---

[1] Talking Parents is a web application that facilitates and preserves communications between parties. Mother and Father began using Talking Parents before they were divorced and were required to use it exclusively to communicate with one another since December 2019.

pull out of there the allegations which I believe violate the court's Supplemental Order. I'm not willing to do that." The district court explained, "[T]hat type of practice is inappropriate where attorneys attach e-mails to their pleadings which then I guess they want to become evidence in the case. I think that practice has to stop. There are rules which the attorneys are well aware of that apply to the filing of pleadings." The district court refused to consider Mother's attachments and denied her motion with respect to harassment. The court also addressed Father:

> [J]ust a glance at those e-mails shows that your communications with Miss Heimer are completely inappropriate. And I would tell you, sir, that you are dancing way too close to the fire with this court by those exchanges and those comments.
>
> If this matter is brought back before the court, if those types of exchanges occur going forward and I see derogatory e-mails that are directed to Miss Heimer, I will hold you in contempt for those. So that conduct has to stop, and it has to stop immediately.

[¶8] Mother's attorney then stated he believed they were having an "offer of proof hearing" and asked what rule he had violated by attaching lengthy exhibits to the pleading. The court responded:

> It was not set today for an offer of proof of any kind. This is a hearing on the motion for an order to show cause. So it is determined by the Rules of Evidence and the Rules of Civil Procedure that apply to all such hearings.
>
> So I don't know where you got the idea that it was just an offer of proof hearing. It's not. If you need two hours for a hearing in the future for testimony to be received and for foundation to be established so that evidence can be properly admitted under the Rules of Evidence which requires a foundation, authenticity, all of the things that go into offering e-mails, I'll certainly give you whatever time you think that you need. But I'm not going to take and look at e-mail attachments which are not evidence without them being introduced in a proper way in a proper evidentiary hearing.

3

Mother's counsel did not request a continuance, or ask to call Mother to testify about the exhibits. The district court denied the motion with respect to the inappropriate comments.

[¶9] Five weeks later, Mother requested a three-hour evidentiary hearing on her fifth motion. On the same day, she filed a motion to reconsider the $100 fee award, citing the fee shifting provision in the divorce decree, along with an "offer of proof" showing she had incurred $12,266.01 in legal fees in connection with that motion.

[¶10] A few days later, Mother filed a new motion to show cause why Father should not be held in contempt. She alleged Father continued to harass her by making "mean and nasty and derogatory and deprecatory statements" via the Talking Parents website, and that he had further harassed her and invaded her privacy by sending a box of live hermit crabs to her home as a surprise birthday gift for one of the children. Mother also requested legal fees and costs related to her sixth motion. The district court issued an order requiring Father to appear for a hearing and an order setting an evidentiary hearing for the same date and time.

[¶11] At the hearing, Mother's counsel stated he believed they were present for an evidentiary hearing on Mother's fifth motion harassment claim. The district court explained that Mother's counsel had misunderstood; the court did not intend to revisit communications between the parties prior to the fifth motion or to reconsider its ruling. Mother's counsel accepted the ruling and presented only evidence of Father's conduct since the last hearing.

[¶12] Mother testified about Father's specific statements on the Talking Parents website and her attorney moved to admit her exhibit containing the entire span of communications on Talking Parents. The court admitted the communications that had taken place since the last hearing as substantive evidence and admitted the earlier communications for the limited purpose of establishing context and the effect on Mother.

[¶13] Mother testified about arriving home from a weekend away to find a smelly box of "half-dead" hermit crabs that had been sitting in the June sun. After hearing Father's testimony, the district court found Father knowingly harassed Mother: "Certainly you wouldn't send a monkey or a tarantula or worse yet a cat to somebody without talking to them about that and getting their okay."

[¶14] The district court found one of Father's statements, "You're a messed up, bad person," violated the supplemental divorce decree, and recognized the statement was not made in isolation. The court reviewed the entire span of communications for context and noted "repeated attacks on Ms. Heimer, repeated attacks on her family, a barrage of email after email after email. They're clearly harassing in nature[.]" The court stated that "had

4

those communications been properly presented at the June 25th hearing I very likely would have found that they were violations, they were contempt by Mr. Heimer of this Court's orders." The district court found by clear and convincing evidence that Father had willfully disobeyed the court's orders, and ordered all future communications must deal with the children only, without comment or criticism about the other parent. The court ordered Father to post a $5,000 cash bond to be released to him if he complied with the supplemental divorce decree language for one year. The court awarded Mother her reasonable attorney fees associated with the most recent motion, but denied her motion for reconsideration of the $100 fee award associated with the previous motion.

## *DISCUSSION*

### I.   *Was Mother Denied Due Process When the District Court Refused to Consider the Attachments to Mother's Reply Brief at the Hearing on Her Fifth Motion?*

### A.   **Contempt Procedure**

[¶15] Wyoming law provides for post-petition motions for order to show cause:

> (b) A court having jurisdiction under W.S. 20-2-203 may, upon appropriate motion of a party, require a parent to appear before the court and show just cause why the parent should not be held in contempt, upon a showing that the parent has willfully violated an order concerning the care, custody and visitation of the children. In order to enforce and require future compliance with an order the court may find that the parent is in contempt of court, award attorney's fees, costs and any other relief as the court may deem necessary under the circumstances to the party aggrieved by the violation of an order.

Wyo. Stat. Ann. § 20-2-204(b) (LexisNexis 2019).

> To establish civil contempt, the plaintiff must show by clear and convincing evidence that: 1) there was an effective court order requiring certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor willfully disobeyed the order. In order to find a willful violation, the order violated must be clear, specific and unambiguous.

A civil contempt order must be supported by clear and convincing evidence. Clear and convincing evidence is evidence that would persuade a finder of fact that the truth of the contention is highly probable. Once the elements of contempt are proven, the burden then shifts to the person charged with contempt to show he or she was unable to comply.

*Breen v. Black*, 2020 WY 94, ¶¶ 11-12, 467 P.3d 1023, 1027 (Wyo. 2020) (cleaned up).[2]

[¶16] Such clear and convincing evidence can usually only be provided to the district court in an evidentiary hearing. *See, e.g.*, *Fowles v. Fowles*, 2017 WY 112, ¶ 12, 402 P.3d 405, 409 (Wyo. 2017); *Bullock v. Bullock*, 2014 WY 131, ¶ 9, 336 P.3d 136, 139 (Wyo. 2014); *Shindell v. Shindell*, 2014 WY 51, ¶ 5, 322 P.3d 1270, 1273 (Wyo. 2014). "Once the elements of contempt are proven, the burden then shifts to the person charged with contempt to show he or she was unable to comply." *Breen*, 2020 WY 94, ¶ 12, 467 P.3d at 1027 (citing *Kleinpeter v. Kleinpeter*, 2017 WY 76, ¶ 10, 397 P.3d 189, 193 (Wyo. 2017)).

## B.     Standard of Review

[¶17] Our usual standard of review is lenient. "This Court does not interfere with an order holding a party in civil contempt of court in a domestic relations case 'absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion.'" *Breen*, 2020 WY 94, ¶ 8, 467 P.3d at 1026 (citations omitted). Here, however, Mother asserts that her due process rights were violated when she was deprived of the opportunity to present evidence at the hearing on her fifth motion. The standard of review for such claims is de novo. *Walker v. Walker*, 2013 WY 132, ¶ 35, 311 P.3d 170, 177 (Wyo. 2013). "The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness." *Id.* (citations omitted).

---

[2] This opinion uses (cleaned up) to indicate emphasis, internal quotation marks, and citations have been omitted from quotations. *See, e.g.*, *Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1244 (10th Cir. 2021); *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017); *State v. Vigil*, No. S-1-SC-37110, 2020 WL 1193154, at *2 (N.M. Mar. 12, 2020); *Smith v. Kentucky*, 520 S.W.3d 340, 354 (Ky. 2017).

## C. Due Process

[¶18] It is understandable that Mother found the procedure on her fifth motion confusing. The district court's Order to Show Cause and Appear set a thirty-minute hearing. The Order was accompanied by an Order Setting Protocols for Video Hearing which advised counsel, among other things, to email exhibits to the judge's judicial assistant, and not to file them with the clerk of court. Mother provided no exhibits to the judicial assistant and, instead, attached them to her reply brief, filed with the clerk of court. At the hearing, the district court invited counsel to present argument on their positions, but never indicated that it would receive evidence or testimony. At that hearing, the district court explained that it would not consider evidence that is offered as an attachment to the pleadings, and Mother's counsel said he believed the hearing was "an offer of proof hearing." The district court rejected that suggestion, and we agree. There is no place for an "offer of proof hearing" in these proceedings. Mother had the initial burden to establish contempt by clear and convincing evidence, and she did not attempt to do so, other than by asking the district court to consider documents attached to her reply brief.

[¶19] In *Lemus v. Martinez*, we rejected Father's argument the district court's time limits at trial deprived him of due process. 2019 WY 52, ¶ 34, 441 P.3d 831, 839 (Wyo. 2019). We explained, "The opportunity for hearing must be 'appropriate to the nature of the case,' and must be 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *In re ARF*, 2013 WY 97, ¶ 28, 307 P.3d 852, 858 (Wyo. 2013)). Despite planning to call up to seventeen witnesses in a one-day trial, "Father did not object to the time limitations, request more time, or make an offer of proof describing the evidence he would have presented if he had more time." *Lemus*, 2019 WY 52, ¶ 40, 441 P.3d at 840. In *Hofhine v. Hofhine*, Ms. Hofhine argued the district court violated her due process rights by refusing to permit the parties or witnesses to testify at a hearing on her motion to enforce a judgment and decree of divorce. 2014 WY 86, ¶¶ 6, 15, 330 P.3d 242, 244, 246 (Wyo. 2014). This Court explained the purpose of the hearing was to determine the purely legal issue of whether Ms. Hofhine was entitled to additional compensation under the divorce decree, and it would not have been appropriate in that proceeding to admit evidence extrinsic to the parties' agreement. *Id.* at ¶ 16, 330 P.3d at 247. Ms. Hofhine did not object to the procedure, seek to introduce any testimony, or provide an offer of proof indicating the content of any proposed testimony. *Id.*

[¶20] The purpose of the hearing on Mother's fifth motion was for Father to show cause why he should not be held in contempt. The district court set that hearing for thirty minutes, and Mother did not request more time or an evidentiary hearing. Although Mother was present, her attorney did not call her to testify and establish foundation for the exhibits. When it became clear the district court would not accept the task of sorting through 180 pages for evidence of harassment, Mother did not request a continuance.

Wyo. Stat. Ann. § 20-2-204 provides a parent the opportunity to present a showing that the other parent has willfully violated a court order. It does not release a parent from the obligation to carry her burden of proof in accordance with the rules of evidence and civil procedure. Mother failed to carry that burden; she was not deprived of her due process rights.

## D. The Attachments to Mother's Reply Brief are not Evidence

[¶21] Mother's argument she was deprived of due process focuses on the district court's refusal to consider the communications attached to her reply brief as evidence. She contends "the district court's arbitrary decision to not hear Appellant's exhibits attached to her *Answer to Defendant's Counterclaim to* [*her contempt motion*] deprived Appellant of a fundamental fairness."

[¶22] As the district court explained, it struck the exhibits because Mother did not submit them in accordance with the Wyoming Rules of Civil Procedure or Evidence.[3] Mother disagrees, citing W.R.C.P. 10(c), which states, in relevant part, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." She claims the exhibits are "written instruments" because "nearly each and every page of such exhibits evidence [Father's] blatant and unrelenting harassment of [Mother]." But documents are not "written instruments" simply because they contain information the offering party considers important. There are several problems with Mother's reliance on W.R.C.P. 10.

[¶23] First, a motion for order to show cause is not a "pleading," and therefore would not fall under Rule 10. W.R.C.P. 7 lists the documents which are "pleadings," and that list does not include motions of any kind. Second, even if Mother's motion had been a "pleading," the attachments are not "instruments."

[¶24] Black's Law Dictionary defines instrument as a "written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *Instrument*, Black's Law Dictionary (10th ed. 2014). *See Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015) (citing Black's Law Dictionary (10th ed. 2014)) (appellant's affidavit containing a personal narrative of his experiences to support an employment discrimination claim not a "written instrument" for the purpose of F.R.C.P. 10(c)); *see also Perkins v. Silverstein*, 939 F.2d 463, 467 (7th

---

[3] The district court ruled it would "strike all of those e-mail attachments." Although W.R.C.P. 12(f) authorizes a court to strike materials from a pleading for the reasons set forth in that rule, it is more accurate to say that the district court simply ruled those documents were not properly offered into evidence, and it would not consider them. ("I'm not going to take and look at e-mail attachments which are not evidence without them being introduced in a proper way in a proper evidentiary hearing.").

Cir. 1991) ("Apparently reading Fed.R.Civ.P. 10(c) as a license to plead their case by exhibit, plaintiffs attached an assortment of letters, newspaper articles, commentaries, cartoons and miscellaneous other exhibits to their complaint, leaving it to the court to extract the relevant facts.").[4]  This Court has not defined what qualifies as a "written instrument," but in *Chamberlain v. Ruby Drilling Co., Inc.*, we determined a contract and addendum attached to a pleading was an instrument under Rule 10, and therefore became part of the pleading.  986 P.2d 846, 848 (Wyo. 1999).

[¶25] Unlike the contract in *Chamberlain*, the 148 pages of Talking Parents communications are not "written legal document[s] that define[] rights, duties, entitlements, or liabilities."   To present the documents for the district court's consideration, Mother needed to identify Father's allegedly harassing statements and establish foundation for them in accordance with the Wyoming Rules of Evidence. Instead, Mother failed to submit her proposed exhibits in accordance with the district court's pretrial order, left it to the district court "to extract the relevant facts" from the entire set of communications, and made no attempt at the hearing on her fifth motion to establish foundation for the proper admission of her documents.  The district court correctly declined to consider her exhibits.  Although we question the district court's hearing procedure, in which it invited argument of counsel but not evidence, we conclude that Mother was not deprived of due process because she exercised none of the opportunities available to her to seek the proper admission of the evidence supporting her claims.

## II.     *Mother Was Barred from Relitigating Father's Alleged Email Harassment That Occurred Prior to Her Fifth Motion*

[¶26]  The district court denied Mother's fifth motion with respect to Father's allegedly harassing communications.  Mother raised it again in her sixth motion, and the district court stated that it had already ruled on that issue and that it did not intend to revisit the ruling or any evidence about Father's conduct prior to the hearing on her fifth motion. Whether the district court ruled on the issue in the earlier hearing is a question of fact, and whether Mother was precluded from litigating the issue further is a question of law. "We review a district court's findings of fact for clear error." *Motylewski v. Motylewski*, 2021 WY 51, ¶ 11, 484 P.3d 560, 561-62 (Wyo. 2021) (citing *Osborn v. Kilts*, 2006 WY 142, ¶ 6, 145 P.3d 1264, 1266 (Wyo. 2006)).  We review its findings of law de novo. *Matter of Adoption of MAJB*, 2020 WY 157, ¶ 9, 478 P.3d 196, 200 (Wyo. 2020).

---

[4] "Because the Wyoming Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal court interpretations of their rules are highly persuasive in our interpretation of the corresponding Wyoming rules." *Carroll v. Gibson*, 2021 WY 59, ¶ 9 n.5, 485 P.3d 1004, 1007 n.5 (Wyo. 2021) (quoting *Gunsch v. State*, 2019 WY 79, ¶ 15 n.4, 444 P.3d 1278, 1282 n.4 (Wyo. 2019)).

[¶27] Mother asserts the district court erred when it announced at the later hearing that it had already ruled on the issues raised in her fifth motion. Mother says this statement is erroneous because it contradicts what she perceived as an invitation to have an evidentiary hearing on her fifth motion "in the future." However, the district court's ruling left no doubt: "I would strike all of those e-mail attachments, and I would deny the motion with respect to the inappropriate comments." We turn then to the legal question of the finality of this ruling.

[¶28] In *Breen v. Black*, 2015 WY 96, ¶ 19, 353 P.3d 725, 729 (Wyo. 2015), an appeal of an order on a motion to show cause post-divorce, we said:

> This Court has long abided by the rule that a party should not be permitted to subsequently litigate facts which he could have raised but failed to raise or prove in a prior action that concerned the same subject matter. That rule protects the opposing party from having to expend excessive time and money in defending against an alleged liability in several proceedings rather than in one, and it carries the systemic benefit of avoiding unnecessary and unduly prolonged litigation. *Davis v. Davis*, 56 Wyo. 524, 534-35, 111 P.2d 124, 127 (Wyo. 1941). We can think of few places where such limitations can provide more benefit to courts, litigants, and the litigants' children than in post-divorce proceedings.

In *Motylewski*, we applied the four res judicata factors to post-divorce proceedings: "(1) is there identity of parties; (2) is there identity of subject matter; (3) are the issues the same and do they relate to the subject matter; and (4) are the capacities of the persons identical in reference to both the subject matter and the issues between them." 2021 WY 51, ¶ 12, 484 P.3d at 562 (citing *Rigdon v. Rigdon*, 2018 WY 78, ¶ 13, 421 P.3d 1069, 1073 (Wyo. 2018)). Applying these factors, we conclude Mother's earlier harassment claim was barred. The parties were identical; the subject matter, Father's communications before the earlier hearing, was the same; the issue, that Father violated the decree by sending messages that harassed Mother by making and implying mean and nasty and derogatory and deprecatory statements to her, was the same; and the parties were in the same position with relation to one another.

[¶29] In *Breen v. Black*, ex-spouses disagreed over their respective share of the children's medical expenses. 2015 WY 96, ¶¶ 4-5, 353 P.3d at 727. Mother attempted to recoup Father's share and, in response, Father claimed that Mother owed him more than he owed her, but he failed to provide evidence to support the defense. *Id.* at ¶¶ 4-6, 353 P.3d at 727. The court entered judgment for Mother, and Father did not appeal. *Id.* at ¶ 7, 353 P.3d at 727-28. More than a year later, Father filed a motion for contempt citing

Mother's failure to pay her share of medical expenses he had paid, many of which arose before the hearing on Mother's earlier claim. *Id.* at ¶ 8, 353 P.3d at 728. The district court determined Father's claim was not barred by res judicata. *Id.* at ¶¶ 9-13, 353 P.3d at 728. We said Father's claims were barred if they could have been litigated in the earlier proceeding:

> Clearly they could have been—and they were, ineffectively, because he raised an offset to [Mother's] claims both in his responsive pleading to the 2012 motion seeking to have him held in contempt and in the hearing on that motion. He simply failed to prove the offset. The district court entered a judgment resolving those issues.

*Id.* at ¶ 17, 353 P.3d at 729. Like the father in *Breen*, Mother litigated, but failed to prove, her claim of harassment in the hearing on her fifth motion for contempt. Her claim was thereafter barred with respect to Father's conduct prior to that hearing.

[¶30] The district court's ruling at the hearing on Mother's fifth motion concluded the issue of Father's alleged harassment up to that point. The district court did not err when it announced that it had already ruled on Mother's harassment allegation arising from the period before and that it would not revisit that ruling.

***III.*** *The District Court Did Not Err When It Found Father Was Not in Contempt for Failing to Timely Pay His Portion of the Children's Medical Bills*

[¶31] "District courts have the inherent power to punish contempt, and we will not disturb a contempt order in a domestic relations case absent a 'serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion.'" *Jenkins v. Jenkins*, 2020 WY 120, ¶ 5, 472 P.3d 370, 372 (Wyo. 2020) (quoting *Breen*, 2020 WY 94, ¶ 8, 467 P.3d at 1026). "Our review requires us to determine whether the district court could reasonably conclude as it did." *Jenkins*, 2020 WY 120, ¶ 5, 472 P.3d at 372-73 (citing *Fowles*, 2017 WY 112, ¶ 14, 402 P.3d at 410).

[¶32] Mother complains of the district court's refusal to find Father in contempt for the manner and timeliness of his reimbursement for his share of the children's medical expenses.

> The purpose of a civil contempt is to coerce a party into complying with a prior court order. In a civil contempt proceeding, the contemnor carries the keys of his prison in his own pocket, and can obtain release by complying with the

11

order of the court that sent him there. The contemnor's
compliance is all that is sought on civil contempt.

*Breen*, 2020 WY 94, ¶¶ 15-16, 467 P.3d at 1028 (cleaned up). The district court abuses its discretion when it holds a parent in contempt for a violation that was remedied before the action was filed. *Id.* at ¶¶ 17-18, 467 P.3d at 1028.

[¶33] Father remedied his violation by reimbursing Mother for the children's medical expenses three months before she filed her fifth motion for order to show cause. The district court did not find Father in contempt, but made it clear that in the future, Father was to pay "in a timely manner and not by way of an electronic wire transfer which would cost [Mother] bank fees." The district court did not err by denying Mother's fifth motion with respect to medical expenses.

### IV.	The District Court Abused Its Discretion by Awarding Mother, without Analysis, $100 for Attorney Fees Related to Part of Her Fifth Motion

[¶34] This Court reviews a district court's grant or denial of attorney fees for abuse of discretion. *Hofhine*, 2014 WY 86, ¶ 17, 330 P.3d at 247 (citing *Sterrett Props., LLC v. Big-D Signature Corp.*, 2013 WY 154, ¶ 8, 314 P.3d 1155, 1157 (Wyo. 2013)).

> A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances. The party who is attacking the trial court's ruling has the burden to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did.

*Meiners v. Meiners*, 2019 WY 39, ¶ 9, 438 P.3d 1260, 1266 (Wyo. 2019) (quoting *McBride-Kramer v. Kramer*, 2019 WY 10, ¶ 11, 433 P.3d 529, 532 (Wyo. 2019)).

[¶35] Mother argues the district court abused its discretion when it awarded her only $100 in attorney fees related to the fifth motion, and when it denied her request to reconsider the award. We agree. The divorce decree provided that in the event one party was required to take legal action to enforce it, that party would be entitled to recover all costs and attorney fees of such an action. Attorney fees are recoverable if expressly provided for by statute, contract, or decree. *Hofhine*, 2014 WY 86, ¶ 18, 330 P.3d at 247 (husband entitled to recover fees pursuant to a provision of Decree Nunc Pro Tunc). However, the fees must be "reasonable under the lodestar test: the product of reasonable hours times a reasonable rate." *Painter v. Hallingbye*, 2021 WY 78, ¶ 42, 489 P.3d 684, 696 (Wyo. 2021) (internal quotation marks omitted) (quoting *State ex rel. Wyo. Workers' Comp. Div. v. Brown*, 805 P.2d 830, 858 (Wyo. 1991)). The lodestar test requires courts to make "a determination of '(1) whether the fee charged represents the product of

reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward.'" *In re KMO*, 2013 WY 113, ¶ 9, 309 P.3d 827, 830 (Wyo. 2013) (quoting *Weiss v. Weiss*, 2009 WY 124, ¶ 8, 217 P.3d 408, 411 (Wyo. 2009)). Even when fees are expressly provided for, "a trial court has the discretion to exercise its equitable control to allow only such sum as is reasonable or the court may properly disallow attorney's fees altogether on the basis that such recovery would be inequitable." *KMO*, 2013 WY 113, ¶ 9, 309 P.3d at 830 (quoting *Dewey v. Wentland*, 2002 WY 2, ¶ 50, 38 P.3d 402, 420 (Wyo. 2002)). "There must, however, be some proof or evidentiary basis for determining a reasonable fee." *Miles v. CEC Homes, Inc.*, 753 P.2d 1021, 1027 (Wyo. 1988) (citing *Anderson v. Meier*, 641 P.2d 187, 192 (Wyo. 1982)).

[¶36] The district court did not provide an evidentiary basis for awarding Mother $100 on her fifth motion, other than to explain she only prevailed on one of her three allegations. She filed a motion to reconsider the award, but the district court said it was "not willing to reconsider its prior decision and does not award Mother the $12,000 in attorney fees that she is requesting." Because the district court did not give some proof or evidentiary basis for the $100 award, it abused its discretion.

## *CONCLUSION*

[¶37] Mother's due process rights were not violated when the district court declined to consider Mother's exhibits at the hearing on the fifth motion. The district court did not err when it refused to revisit that ruling, or when it denied Mother's motion for contempt on a violation that Father resolved before she filed. The district court did abuse its discretion when it awarded Mother $100 in attorney fees related to her fifth motion without explanation. We reverse and remand for further consideration on that issue and affirm in all other respects.

13